A writ of garnishment, as ancillary to his main suit, was caused to be issued by appellant, plaintiff in the court below, and served upon the appellee, J. O. Watson, garnishee in the court below; and the record discloses that one J. D. Davis was indebted to the appellant upon a promissory note, and judgment was rendered in the original action, with the costs of suit, amounting to $177.87, against said Davis. In the garnishment proceeding appellee, Watson, answered, denying that he owed the said Davis any sum, or that he had any effects in his hands or possession belonging to said debtor; this answer was controverted by appellant, alleging that, at the time the writ was served, the garnishee had in his possession certain live stock which was the property of the said J. D. Davis; and the record discloses that the debtor, Davis, was a tenant on appellee's farm, and was entitled to pasture for his said stock, and that during the tenancy Davis, being also indebted to Watson, and contemplating leaving the country, solicited from Watson, the garnishee, a "standing bid" or offer for all the personal property that he (Davis) possessed, and thereupon Watson made an offer on said property, which included the live stock in controversy. During the pendency of this offer the appellee Watson became dissatisfied with the manner in which certain of the horses were being handled, and complained to Davis that the stock was being abused by his boys; also informing Davis that he desired to ship the stock, but, on account of the manner in which they were being handled, that he would call his bid off. Davis insisted that Watson permit his bid to stand, and it was then arranged that ten head of the live stock, designated and selected by Watson, should be placed in the latter's field at his home place, and that, upon that consideration, he would let his bid stand in the manner made, to which Davis agreed. We infer from the record that the oat field upon which Davis' stock were pastured was Watson's home place, and inclosed separately, with accessible water in said field for the use of stock, distinct from any pasture Davis formerly used, or had the right to use. Watson *Page 534 
testified that "he was just merely pasturing and watering it [the stock] to get it up in good shape," and that he had some of his own stock in the same field with that of Davis, and to that extent he had the possession of the stock. The testimony indicates that during the pasturage of Davis' stock by Watson the former had the right to resume possession of the horses at any time. Immediately after the garnishment was served upon Watson, Davis sold the stock to one Collins, and Collins immediately resold to Watson for $5 less money than he paid for said stock; previous arrangement having been made between Collins and Watson for the resale of the property. Part of the consideration between Collins and Davis, and Watson and Davis, was indebtedness that Davis owed each.
The question of the possession of Watson of the stock, whether sufficient, under the statute of garnishment, as "effects" in the hands or in the possession of Watson to sustain garnishment, seems to have been the crucial question litigated between the parties, also submitted to the jury, who decided in favor of the garnishee.
The appellant assigns error, complaining that the court permitted the garnishee, Watson, to testify that he did not have actual possession of the stock in controversy, on the ground that such testimony was a conclusion involving a mixed question of law and fact, and was one for the jury to determine from the evidence. Appellant argues that particularly in this character of case, where the question of possession was the deciding issue in the controversy, that to permit a witness to inform the jury that he did not have actual possession, that the latter would be probably led to believe — the court having sanctioned the admissibility of the testimony — that the garnishee did not have, and the facts did not raise, that character of control and custody of the stock as to make the same subject to garnishment. We think this complaint is just; that, as to the distinct issue in the character of case presented here, a conclusion by a witness that he did not have a certain character of possession, permitted to the jury under the sanction of the court, might mislead a jury, and the credibility of the witness would stamp such a conclusion with more or less strength as to its correctness. This is equivalent to permitting a witness and a litigant to testify that he owned certain property, where ownership of the same was in litigation between the parties, which is not admissible. National Bank v. Ricketts, 152 S.W. 646. Appellee says that appellant's statement is insufficient, in that the ground of the objection is not stated in the brief. One of the propositions under the first assignment of error complaining of the particular testimony involved suggests the very objection made in the bill of exceptions, which latter is full and complete when we go to the record, and, in the exercise of our discretion regarding the assignment upon a question directly involving the merits, we think such an objection should be overruled. In regarding this assignment as well taken, it necessarily opens the record to the merits of the case, and it is our view that, upon the undisputed facts in this controversy, judgment should have been rendered in the lower court in favor of the creditor and against the garnishee for the value of Davis' equity in the ten head of live stock, excluding the amount of chattel mortgage liens thereon.
The garnishor, in his application for the writ (article 273, R.S.), is required to state, among other things, that he "has reason to believe, and does believe, that the garnishee * * * is indebted to the defendant, or that he has in his hands effects belonging to the defendant"; and the garnishee is required "to answer upon oath what, if anything, he is indebted to the defendant, and was when such writ was served, and what effects, if any, of the defendant he has in his possession, and had when such writ was served"; and the effect of the service of such writ is to make it unlawful "for the garnishee to pay to the defendant any debt or to deliver to him any effects," subject, of course, to the right of replevin. Articles 274, 279, R.S.
There seem to be two phases of appellant's defense in this matter: First, that his possession is not such a custody and control of this property as to constitute the possession contemplated by the statute; and, second, live stock is not subject to garnishment, whatever the possession may be. It may be that appellee is not expressing his position in the manner expressed by us; but, when resolved, we think the contentions are as stated, and both will be treated by us together.
We believe the testimony clearly establishes that Watson, the garnishee, is a bailee, and that the bailment of said property was for the mutual benefit of both parties. Watson was a prospective purchaser of the horses, had made a standing bid for same, and had been entreated by Davis to permit the bid to stand for an indefinite time; and during the pendency of that offer, on account of the rough handling of the stock — it being contemplated that the same would be shipped by him when purchased — Watson proposed to abandon the bid made by him, and, as a result of the continued existence of said bid, it was agreed that said stock would be placed upon the oat field and within the inclosure of said Watson. Davis thereby procured a continuity of the bid, and Watson, if the bid were accepted, procured a bettered condition of his horses, in view of the future purchase and *Page 535 
contemplated disposition of same by him. While it has some features of a total want of consideration, it has features of an unilateral contract, to the extent that, if Davis had accepted the offer during the period of pasturage of the live stock within a reasonable time, Watson would have been bound; hence it is clearly a bailment until the relationship was terminated.
With reference to the meaning of the word "effects" in our garnishment statute, we are not relegated to the decisions, and the reconciliation of conflicts in the same; but our Revised Statutes of 1911, arts. 5502 and 5504, in regard to the construction of Laws and the rule governing the same, prescribe that the word "effects" "includes all personal property and all interest therein." Necessarily live stock constitutes "effects," unless by some rule of construction you would be required to read the same out of the statute. To eliminate from the statute live stock in the hands of a bailee (if sufficiently in his possession), and declare that it is not comprehended within the letter and the spirit of the law, is to our minds legislating by forced interpretation — yielding to some instances of inconvenience, instead of yielding to the statute.
We also infer that appellee contends that, because the record shows that Davis, the debtor, had the right to resume the possession, or take the live stock off the field of the bailee, at any time, the latter's possession was not that character of control contemplated by the statute. Possession and right of possession are distinct elements, illustrated, we think, rather forcibly by the case of Loyles v. Hodges Bros., 44 Ga. 648. In that cause the plaintiff proved that the defendant debtor had left with the garnishee a large box, for safekeeping only; the latter declining to be responsible for the box, but permitting the debtor to leave it in the storehouse. It was in the storehouse at the time of the service of the garnishment, and removed by the defendant debtor with the permission of the garnishee; the box containing goods of a certain value. The Supreme Court of Georgia said: "Our law (Code, § 3226) requires the garnishee to answer what he is indebted to the defendant, or what effects of his he has in hand, or had at the service of the summons. Was not this box and its contents in store with the garnishee? True, he held it without risk; but it was none the less in his charge. He would have been liable for gross neglect had any damage come to it. * * * We see nothing to justify us in saying that there were not `effects' of the defendant in the hands of the garnishee. They were in his custody, in his possession, as (at) the will of the owner, and the verdict of the jury was right. The goods were turned over to the defendant by the garnishee, at his own risk, after the service of the summons." Further, and with regard to the question of the accessibility by the bailor, and his right to resume possession of the property, destroying the proposition of possession, we cite the case of Brown v. Davis, 18 Vt. 212. That case discloses that one Davis had loaned a wagon to another for the purpose of use; the bailee used the wagon in his business when necessary, and he had no claim upon the same, "nor any right to use it any longer than Davis should choose to leave it in his possession;" and that the wagon was, at the time of answer, on the premises of the trustee, subject to the control of Davis, who could legally claim it. The statute of Vermont prescribes that "every person, having any goods, effects or credits of the particular defendant intrusted or deposited in his hands or possession, or which shall come into his hands or possession, after the service of the writ and before disclosure is made, may be summoned as trustee." The Supreme Court of Vermont said: "It is very manifest, from the facts disclosed by Hacket [the trustee], that the wagon in question was intrusted or deposited in his hands or possession. The case, then, would seem to fall clearly within the terms of the statute." We do not think that the words "intrusted" or "deposited" would make that difference between the Vermont statute and the Texas statute as to make the decision cited and quoted inapplicable to the facts of this case. The fact that in this case the particular live stock were on the field and within the inclosure at the home place of the garnishee does not differentiate it from the character of possession by the garnishee of the same live stock if cared for in his barn, and fed by him three times a day. Appellee, however, contends that "live stock requiring much expense and trouble to keep, and being perishable property, are not the subject of garnishment, and can only be reached by writ of attachment, with the attaching officer as trustee," etc. The argument is that the garnishment bond is made payable to Davis, the debtor, and that the garnishee would be without remedy, subjecting him to considerable inconvenience and expense in keeping the property and responding to the writ. This is an argument of expediency which we are not inclined to think should prevail as against the unambiguous language of the statute. Article 307, R.S., under Garnishment, prescribes: "Where the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff; where the answer of the garnishee has not been controverted and the garnishee is held thereon, such costs shall he taxed against the defendant and included in the execution provided for in this chapter where the answer is contested, the costs shall abide the issue of such contest."
We are inclined to think that a reasonable interpretation of this statute would *Page 536 
entitle a garnishee in a proper case to a reimbursement to the extent of a reasonable compensation for the costs of keeping the horses during the pendency of the suit. Expenses incident to litigation, properly attributable thereto, in proper cases, are always considered as costs. The statute does not specifically mention attorney's fees as reasonable compensation to be adjudged to the garnishee where one has been employed to aid the garnishee in answering the suit. Attorney's fees cannot properly be designated as court costs in any case, except those proceedings unnecessary to mention, and a reasonable compensation to the garnishee for the purpose of compensating an attorney who aids the former in answering the suit does not come within the purview of the language, "costs of the proceeding," any more than a reasonable compensation to the garnishee as costs brought about by this proceeding for the purpose of keeping the live stock to deliver to the sheriff in the event the plaintiff recovers. Associate Justice Gaines said, in the case of Johnson Co. v. Blanks, 68 Tex. 496, 4 S.W. 558: "By compensation is meant a sufficient sum to remunerate the garnishee for expenses necessarily incurred in protecting his interest in the proceeding." If a case arises where the garnishee would be too heavily burdened or inconvenienced, the court, in the exercise of its power, may possiby reach such a condition of affairs when confronted with the same; that, however, is not before us.
Without attempting to discuss the cases cited by appellee, most of which we do not think have any bearing whatever to the case at bar, we think that, as applied to the undisputed facts in this case, with reference to the possession of Watson of the live stock in his inclosed farm, and under his care and custody, the same was subject to the writ of garnishment; and such conclusion requires us to reverse and remand this cause, with directions. If we could more definitely ascertain the amount of the mortgage liens of Collins and Watson upon said ten head of horses, and the value of Davis' equity over and above said amount, we would reverse and render this cause to that extent. We regard the actions of Watson in agreeing to the sale of the horses by Davis to Collins as a constructive delivery of said horses to Davis and thence to Collins, which is in violation of the garnishment statute, and such acts, taken in connection with the resale of said horses by Collins to him (Watson) by virtue of a prearrangement between them, should be treated by the courts in the nature of a conversion of the property; and, if the facts are the same upon another trial, the trial court is ordered to direct a verdict for McClung against Watson for the amount of his debt upon appropriate pleadings, if Davis' equity in the stock over and above the mortgage liens exceeds or equals that amount; the recovery by McClung, of course, not to exceed the value of such equity in any event; Watson to pay the costs occasioned by him in the garnishment suit in the trial court and the costs of this appeal.
Reversed and remanded, with directions.