FIRST STATE BANK OF AMARILLO v.
COOPER et al. (No. 817.)

(Court of Civil Appeals of Texas. Amarillo.
June 26, 1915. Rehearing Denied
Oct. 9, 1915.)

1. APPEAL AND ERROR ⊜⟹1040 — HARMLESS
ERROR—RULINGS ON PLEADING.

In an action on a note, error, if any, in
overruling plaintiff's exception to a part of defendants' answer, because not presenting the issue of fraud, was harmless, where that issue
was presented by the supplemental answer, on
which the case was tried.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4089–4105; Dec. Dig. ⊜⟹
1040.]

2. EVIDENCE ⊜⟹434—PAROL EVIDENCE—NOTE
—FRAUD.

Where fraud was alleged in the answer of
sureties to an action on a note with respect to
the plaintiff's representation as to the application of collateral to the note, parol evidence of
the agreement was admissible.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2005–2020; Dec. Dig. ⊜⟹434.]

3. PRINCIPAL AND SURETY ⊜⟹156—ACTION—
ANSWER—ISSUES.

In an action against a surety on a note,
the answer alleged that at the time of its execution the plaintiff had certain collateral, that defendants asked plaintiff as to it and were assured by the president of plaintiff that part of
the collateral was being collected, and that the
amount collected would be credited on the note,
and that the part not collected would remain
as security for the note. Held, not a defense
to the note, but a recital of statements that
the collateral would be held to secure the note.

[Ed. Note.—For other cases, see Principal and
Surety, Cent. Dig. §§ 423–426; Dec. Dig. ⊜⟹
156.]

4. PRINCIPAL AND SURETY ⊜⟹156 — ACTION
AGAINST SURETY—ANSWER—CERTAINTY.

In an action against a surety on a note,
an answer failing to specify the collateral
which plaintiff was alleged to have misapplied,
and alleging that defendants were unable to give
a more accurate description of the collateral
notes, or what part of them had been so used,
and that such notes were in the hands of the
plaintiff, who was in a position to know the
description of it, was not objectionable, as indefinite and uncertain.

[Ed. Note.—For other cases, see Principal and
Surety, Cent.Dig. §§ 423–426; Dec.Dig. ⊜⟹156.]

5. APPEAL AND ERROR ⊜⟹1046—TRIAL ⊜⟹25
—ARGUMENT—RIGHT TO OPEN AND CLOSE.

Under rule 31 for district and county courts
(142 S. W. xx) providing that plaintiff shall
have the right to open and close, unless the
burden of proof under the pleadings rests upon
the defendants, or the defendants make the admission of record at the stage prescribed by the
rule, including the provision of Rev. St. art.
1953, relating to the argument, plaintiff bank,
in an action on a note, where defendant had the
burden of showing its right to recover, that defendants were liable because of their interest in
a company, and their assumption of its debt,
and where plaintiff had the burden of showing
a proper application of the proceeds of collateral,
and an agreement that the proceeds were to
be applied upon two different debts, the granting to defendants of the right to open and close
was reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 4128–4131, 4134; Dec.Dig. ⊜⟹
1046; Trial, Cent.Dig. §§ 44–75; Dec.Dig. ⊜⟹25.]

6. TRIAL ⊜⟹85 — ADMISSION OF EVIDENCE —
OBJECTIONS—EVIDENCE ADMISSIBLE IN PART.

There was no error in overruling an objection to the whole of testimony, part of which
was admissible.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 222–225; Dec. Dig. ⊜⟹85.]

7. EVIDENCE ⊜⟹471, 472—FACT OR CONCLUSION.

In an action on a note, where one of the issues of fact and law made by the pleadings
was whether one M. was a principal or a surety,
his statement that he was a surety involved a
legal conclusion from the facts and circumstances of the transaction, and invaded the province
of the jury.

[Ed. Note.—For other cases, see Evidence,
Cent. Dig. §§ 2149–2195, 2248; Dec. Dig. ⊜⟹
471, 472.]

8. BILLS AND NOTES ⊜⟹511—ACTION—ISSUES
AND EVIDENCE.

In an action on a note, with an allegation
of an agreement that the collateral should be
divided between the note and another, evidence
that a defendant, at the time the agreement was
made, objected to switching any of the collateral
to protect the other note, was admissible.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 1760–1770; Dec. Dig. ⊜⟹
511.]

9. BILLS AND NOTES ⊜⟹499—ACTION—BURDEN OF PROOF.

In an action on a note, defendants, whose
pleadings raised the issue that plaintiff had
failed to account for certain collateral, and
sought relief to the extent of the value thereof,
had the burden of showing the value of the securities not accounted for.

[Ed. Note.—For other cases, see Bills and
Notes, Cent. Dig. §§ 1682, 1695–1697; Dec. Dig.
⊜⟹499.]

10. TRIAL ⊜⟹252 — SUBMISSION OF ISSUES —
EVIDENCE TO SUPPORT.

In an action on a note, where there was no
evidence to support the issue as to whether plaintiff had failed to account for collateral, it should
not have been submitted.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 505, 596–612; Dec. Dig. ⊜⟹252.]

11. TRIAL ⊜⟹191 — INSTRUCTIONS — ASSUMPTION OF FACT.

In an action on a note, an instruction that
if the note was executed by two of the defendants on condition that it should not be delivered
or be effective until a company and the other defendant should sign as principals, and should be
held until such condition was complied with,
defendants would not be liable on the note, was
not objectionable, as assuming that the court
thought that the first two defendants were sureties.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 420–431, 435; Dec. Dig. ⊜⟹191.]

12. PRINCIPAL AND SURETY ⊜⟹27—DELIVERY
—CONDITIONS.

Two signers of a note as principals had the
right to sign and deposit it with the payee, on
condition that it should not become valid until
other principals had signed it.

[Ed. Note.—For other cases, see Principal and
Surety, Cent. Dig. § 56; Dec. Dig. ⊜⟹27.]

13. APPEAL AND ERROR ⊜⟹699—INSTRUCTIONS
—HARMLESS ERROR.

In an action on a note, where it appeared
that defendants had given three separate notes
for the debt in question, one dated April 25,
1912, renewed by note dated November 1, 1912,
and again renewed by the note in suit dated
April 1, 1913, and the court on appeal could not

determine upon the record upon which note the general verdict was based, it could not determine whether or not the failure to give charges intended to instruct with reference to the rights of plaintiff under each of the notes was error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2928–2930; Dec. Dig. ☞ 699.]

14. APPEAL AND ERROR ☞928 — PRESUMPTION IN SUPPORT OF JUDGMENT.

In the absence of any information enabling it to determine error in the refusal to give charges, the presumption must be in support of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3749–3754; Dec. Dig. ☞ 928.]

15. TRIAL ☞194—INSTRUCTION—WEIGHT OF EVIDENCE.

In an action on a note, where there was a dispute as to whether or not other collateral had been substituted for the stock of defendant's company, the refusal of a requested charge that the jury could not consider the capital stock of the company which had been put up as collateral, because part of it had been sold before the execution of the renewal note with knowledge of the defendants that the proceeds had not been applied, but that other collateral was substituted, was proper, as being upon the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. ☞194.]

16. BILLS AND NOTES ☞430, 537—RENEWAL NOTES—EFFECT.

If either of two renewal notes constituted a novation, the note for which the renewals were given was no longer a binding obligation, and this was a question for the jury.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1251–1256, 1862–1893; Dec. Dig. ☞430, 537.]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Action by the First State Bank of Amarillo, Tex., against W. P. Cooper and others. Judgment for defendants, and plaintiff appeals. Reversed, and cause remanded.

Turner & Rollins, of Amarillo, for appellant. Jones & Miller, of Amarillo, for appellees.

HALL, J. The original petition filed by appellant bank was to recover the amount due on a promissory note of $2,500, dated April 1, 1913, bearing interest at 10 per cent. from date and providing for 10 per cent. attorney's fees, signed by W. P. Cooper, R. R. Wheatley, and Frank Morris, Jr. The note contained the usual provision waiving presentment for payment, notice of nonpayment, protest, etc. The following credits were admitted in the petition: $587.50, paid August 26, 1913; a number of small credits from $1 up to $10, aggregating $116.33, being dated from June 6, 1913, at various times, to November 8, 1913.

Defendants' original answer alleged in substance that the note sued upon was given in lieu of a prior note for the same amount, and that collateral to the value of $2,500 had been put up with said previous note to protect the signers of the note in suit, and that the defendants signed the note sued upon solely as sureties for an indebtedness due by Lankford Furniture Company; that at the time of the execution of the note in question, in suit, the president of plaintiff bank claimed to have collateral security, consisting of certain furniture notes due the Lankford Furniture Company, amounting to about $1,700; that other such notes, worth about $800, were in process of collection at Panhandle and other neighboring towns, and that something more than $280 of said $800 in notes had been collected; and that the bank would at once look up the exact amount and credit same on the back of the note in suit; that the remainder of the $800 worth of collateral would remain as security to the note sued upon. It was further alleged that plaintiff bank, without defendants' consent, thereafter took away half, or about half, of the collateral notes, and applied them to the payment of another note due plaintiff bank, upon which defendants were liable; that plaintiff had been negligent in failing to collect the collaterals, by reason of which defendants had sustained a loss; that Frank Morris, Jr., took a number of the collateral notes for collection, some of which he collected, turning the proceeds over to the bank, amounting to $264.65, which should be credited on the note sued on, together with about $126.50 worth of furniture, which was sold by the bank and the proceeds of which should be applied as a credit. Defendants also claimed a further credit of $280, being the amount which plaintiff admitted was in its possession at the time of the execution of the note in suit; that, if plaintiff did not have in its possession said $800 worth of collateral notes, it perpetrated a fraud on defendants in making such representations; that, at the time the note in suit was executed, defendants signed it upon condition that the Lankford Furniture Company and H. C. Lankford individually would also sign it, and that this was never done, thereby releasing them.

Plaintiff filed several supplemental petitions, alleging, among other things, that the defendants were stockholders and directors in the Lankford Furniture Company, a corporation, which had become bankrupt prior to the execution and delivery of said note; that the indebtedness evidenced by the note had existed in varying amounts for several years, and that there was therefore no necessity for any new consideration in order to render defendants liable thereon; that the benefit received by them was the extension of time on the indebtedness already due. It is further alleged that, at the time the note described in the original petition was executed and delivered, plaintiff had certain collateral notes, which were attached to another note made by said Lankford Furniture Company, in the principal sum of $1,175; that, at the request of defendants, plaintiff's president agreed with them that in the fu-

ture in would divide said collaterals in half whenever money should be collected thereon, crediting one half on the last-named notes and the other half on the note in suit; that this was done, and the credits made simply as a favor to defendants without any consideration or legal duty resting upon plaintiff to do so; that all sums of money paid by defendants through Frank Morris, Jr., to plaintiff, have been credited in accordance with said agreement, with the full knowledge and consent of all defendants.

By first supplemental answer, defendants, among other things, alleged that the note in suit was given in lieu of a note dated November 1, 1912, executed by the Lankford Furniture Company, H. C. Lankford, Frank Morris, Jr., R. R. Wheatley, and W. P. Cooper, in the sum of $2,500, due and payable April 1, 1913; that it was executed in such manner as entitles the defendants to all of the defenses urged to the note originally sued upon and that they set up all of said defenses to said note of April 1, 1913, and further pleaded that said note was delivered with collateral notes worth $2,500, which last-named notes were secured by contracts and written liens on furniture sold by the Lankford Furniture Company; that large sums were collected on said collateral notes and the proceeds not applied to either of said notes; that the collaterals were changed several times by plaintiff or its agents, substituting for the original collateral others of a later date; that the note sued upon and set out in the original petition was procured through fraud and fraudulent representations on the part of the plaintiff, to the effect that the signature of the Lankford Furniture Company and H. C. Lankford would be secured thereto, and that the bank would immediately ascertain the amount collected upon collaterals and credit thereon, and that all collateral notes would remain with the note last executed, and but for such fraudulent representations the note first sued upon would not have been executed.

In its last supplemental petition, plaintiff prayed in the alternative that, if it should be held that it was not entitled to recover upon the note described in the original petition, then that it be allowed to recover upon the note for which it was substituted, dated November 1, 1912. There was a trial before a jury, resulting in a general verdict for the plaintiff in the sum of $100.98, and from a judgment entered accordingly this appeal is prosecuted. There is nothing in the record to indicate upon which note the jury based the verdict.

[1, 2] The first assignment is based upon the action of the court in overruling plaintiff's special exception to all that part of the answer alleging that the president of bank told defendants that $800 worth of collateral was in process of collection and that something more than $280 of said amount had been collected, and that the exact amount would be looked up at once and credited on the back of the note. Appellant insists that the effect of this allegation is to vary the terms of the written note signed by defendants by oral evidence, and that the effect of the evidence was to prove an amount really different from that stated in the face of the obligation. Fraud in the execution of the note described in the original answer was not alleged therein; but in the first supplemental answer (which repeats many of the facts set up in the original answer, and by reference to the original answer urges the defenses there set up to the note originally sued upon also in defense of the note dated November 1, 1912), it is alleged that the statements made by plaintiff's president, to the effect that the amount collected upon the collateral would be looked up and credited on the renewal note, were fraudulently made. The error of the court, if any, in overruling this exception, is harmless. The issue of fraud being squarely presented by subsequent pleadings, and the case having been tried with reference to the issues contained in such supplemental pleadings, no injury has resulted by the court's ruling. In Ablowich v. Bank, 22 Tex. Civ. App. 272, 54 S. W. 794, it is said:

"No fraud, accident, or mistake in execution was alleged and we must indulge the legal presumption that all prior agreements, so far as assented to, had been merged in the written instruments executed, and that they contained the exact terms upon which the minds of both parties thereto met. The instrument sued upon evidenced an absolute promise to pay $450 within a specified time, without condition, and we do not think it was competent to show by parol that the agreement in effect contained a condition upon which a less sum was to be paid."

We must imply from the language quoted that, in accordance with the general rule, if fraud, accident, or mistake had been alleged, parol evidence of the agreement would have been admissible. This assignment is overruled.

In effect the same contention is made under the fourth and seventh assignments. It seems clear to us that, if the appellees signed the last note for an amount greater than was actually due, but upon the assurance that the proper credits would be made thereon, thereby reducing it to the correct amount, and their pleadings alleged fraud on the part of the bank president in making such promise, it is a matter of inducement which they are entitled to prove. These assignments present as error the action of the court in not sustaining a specific exception to one paragraph in the original answer, setting up the execution of the note and the statement by the president that the proper credit would be made, but in which no allegation of fraud is found. Technically, this paragraph of the answer was insufficient; but if fraud is set up elsewhere in the answer, or by supplemental pleadings, as appears to be the case here, we think no harm has been done by the ruling of the court in this instance. The fourth and seventh assignments are also overruled.

[3] The fifth paragraph of defendant's answer is as follows:

"Defendants allege that at the time of the execution of the note sued upon the plaintiff bank had as collateral for the same $1,700 worth of the same paper that was placed up with said previous note, and defendants asked the plaintiff, through its president, what had become of the remaining portion of said collateral security, to wit, the $800 worth of collateral notes, whereupon the said president, who was the duly authorized agent and representative of the plaintiff bank, told the defendants and informed them that said $800 worth of collateral was in process of collection, some of it being at Panhandle and at other places, and that something more than $280 of said $800 worth of collateral notes had been collected, and that the bank would at once look up the exact amount that had been collected and credit the same on the back of said notes as the various items were shown on the bank book, but that it would take some little time to figure up the exact amount, and that the remaining portion of the $800 worth of collateral would remain as security for said note sued upon, making the entire amount equal to the notes; that said collateral notes were of the value of $2,500, and said $1,700 worth of notes were in the bank at said time, and were to be as collateral for said previous note, and were placed as collateral for the note involved in this suit, and the remaining portion of said collateral was to be held, as above explained, to secure the payment of the note in suit, though said additional collateral notes were out in process of collection."

The objection urged in the exception to this paragraph is:

"It seeks to vary the terms of the written note, signed by defendants, by oral evidence, and thus defeat the payment of the amount shown to be due by said note, and does not set up any defense worthy of being considered by this court, or that could properly be urged to defeat the payment of the said note, or any part thereof."

In the absence of any allegation of fraud, this paragraph of the answer should have been stricken out. We are unable to agree with appellant in its construction of the language. As we understand appellee's allegation, referring to the $1,700, it is not an effort to set up a defense, but merely a recital of the statements made by the bank's president as to the existence and location of the collateral notes and as assurance that they would be held to secure the note for $2,500. Reference to the bill of exception shows that the evidence did not sustain the allegation in full. Of course, if the language used by the pleader means what appellant claims it does, the exception should have been sustained; but, as we understand it, the assignment is without merit.

[4] Under the third assignment, appellant insists that paragraph 2 of the defendant's first supplemental answer is too indefinite and uncertain, in that it fails to particularize the collateral which it is alleged was misapplied and changed from one note to another by the bank. Appellees excuse their inability to point out the particular note or notes and other collaterals which had been collected and misapplied by the following allegation:

"These defendants are unable to give a more accurate description of said $2,500 worth of notes, which were attached to that note and put up with the same as security; but they say that a part of the same was the same collateral as they put up with the note originally sued on by plaintiffs, but the defendants are unable to state what part of the same was so used, but they allege that said collateral notes were at all times in the hands of plaintiff bank, and they were in position to know the description of the same and the contents of the same."

A pleader is not required to allege matters peculiarly within the knowledge of the opposite party, and which he shows a good excuse for not being able to state. Florida Athletic Club v. Hope Lumber Co., 18 Tex. Civ. App. 161, 44 S. W. 10.

[5] In the fifth assignment complaint is made of the action of the court in permitting defendants to open and conclude in the introduction of evidence and in the argument of the case. From the brief synopsis of the pleadings, which we have heretofore made, we think the burden of proof of the whole case rested upon the plaintiff. Rule 31 for the government of district and county courts (142 S. W. xx) provides that the plaintiff shall have the right to open and conclude, both in adducing his evidence and in the argument, unless (1) the burden of proof of the whole case under the pleadings rests upon the defendant; or (2) the defendant make the admission of record at the proper stage of the proceedings prescribed by the rule. This rule, as originally promulgated (47 Tex. 623), did not contain in the first clause the words:

"Unless the burden of proof of the whole case under the pleadings rests upon the defendant."

This language was no doubt added in the revision, in order that the rule might include the provisions of article 1953, Revised Statutes, on this subject. The rule relates to both the evidence and the argument, but the statute relates to the argument alone. Hittson v. Bank (Sup.) 14 S. W. 780. The bill of exceptions under this assignment shows that appellee declined to make the admission required by the rule. We therefore conclude that the court permitted them to open and close upon the idea that the burden of proof upon the whole case under the pleadings rested upon them. The decisions in cases where the defendant made the required admission, or endeavored to do so, in order to gain the right to open and close, have little or no bearing upon the question here presented. The first part of rule 31 merely states the common rule with reference to the onus probandi and the incident right to open and close. The note to Brunswick & W. R. R. v. Wiggins, 61 L. R. A., 513, 563, states and discusses what we understand to be the common-law rule thus:

"In Best's little work, 'Right to Begin and Reply,' it is stated that by the affirmative of the issue is meant the affirmative in substance, and not the affirmative in form; i. e., that the judges, in examining the record in order to see on

Tex.) FIRST STATE BANK v. COOPER 299

whom the onus probandi lies, and consequently in whom the right to begin resides, will consider, not so much the form of the pleadings, as the substantial question between the parties, and will cast the onus probandi on the party with whom the real affirmative seems to lie. The author then goes on to give two cases which afford, in terms, two different tests for the discovery as to with which party the affirmative lies, and states that they are the same proposition in different dresses. In the first of the cases mentioned, Amos v. Hughes (1835) 1 Moody & R. 464, the test was laid down by Alderson, B., to be which party would be successful if no evidence at all were given, as upon the opposite party would necessarily rest the onus probandi, and, according to the author, the consequent right to begin. In the other case, Willis v. Barber (1836) 1 Mees. & W. 425, 5 Dowl. P. C. 77, 2 Gale. 5, 5 L. J. Exch. N. S. 204, the same judge, in holding that a defense to an action on a bill of exchange against the exceptor that the bill had been accepted without consideration for the accommodation of the drawer, and had been subsequently indorsed to the plaintiff without consideration, * * * placed the onus probandi on the defendant notwithstanding the affirmative shape of the replication, said: 'The replication is in the affirmative, but it is in answer to a negative. Upon the question as to who is to begin, is it not the proper test to examine whether, if the particular allegation be struck out of the plea there will or will not be a defense to the action?' Thus the two general rules * * * are: (1) To conceive the negative and affirmative allegations by which the issue is joined both struck out of the record, and then the onus probandi lies on the party against whom the judgment must, in their absence, pass; (2) to consider at the trial which party would succeed if no evidence at all were given, as the onus probandi must lie upon his adversary. In the natural course of litigation this burden and right usually reside with the plaintiff, the party who initiates the action, proceeding or suit; and, this being so, it follows that, so long as the affirmative of any substantial issue, however slight, remains with the plaintiff, he retains the right to open and close, even though the affirmative of a majority of such issues is with the defendant. * * * Whenever the general issue is in the case, the plaintiff has the right to open and close. * * * The result of an examination of all the authorities on the subject shows that the general rule or principle at common law is that, where the defendant does not admit the entire demand of the plaintiff, and where there are several issues, if the plaintiff is called on to maintain a single one, he retains and has the right to open and close; * * * that the burden of proof, with its incident right to open and close, naturally and necessarily is, in the first instance, with the plaintiff, or party who initiates the action, suit, or proceeding, and remains with such party so long as it continues incumbent on him to make any proof whatever; that when the defendant, either by an admission in express and absolute terms, or by refraining from denial of plaintiff's cause of action and alleging affirmative matter in avoidance of it, renders it wholly unnecessary for the plaintiff to give any evidence whatever to have a complete recovery of all that he claims, the burden and right are with the defendant."

The rule is further illustrated by the Supreme Court, in Kennedy v. Upshaw, 66 Tex. 442, 1 S. W. 308, where appellee offered a will for probate. Appellant contended that the instrument offered by appellee and the codicil offered by him (appellant) should be taken together and probated as the last will of the deceased. The appellee charged that the codicil was a forgery, and Judge Stayton held that in this state of the pleadings the appellee had the burden upon the whole case. To the same effect is the holding in Heath v. First National Bank, 19 Tex. Civ. App. 63, 46 S. W. 123. In the instant case, notwithstanding the admissions in appellees' original answer and supplemental pleading, the burden rested upon appellant to show its right to recover upon one of the notes declared upon; that defendants were liable because of their interest as stockholders in the Lankford Furniture Company, and their assumption of the debt and the pleadings of defendants necessarily cast upon them the burden of showing a proper distribution and application of the proceeds of the collaterals, as well as the agreement that the proceeds were to be applied upon two different debts. The right to open and close is a valuable right and especially so in cases where the issues of fact are clearly drawn and sharply contested, as in the instant case. We think the court committed reversible error in granting the right to appellee. Cunningham v. Daves, 141 S. W. 808; Meade v. Logan, 110 S. W. 188; Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663. In the case last cited, Willie, Chief Justice, said:

"The right of which he was deprived is statutory, and in this case may have been of importance to the plaintiff, and we cannot say that his rights were not prejudiced in being deprived of his proper position in the trial of the cause."

The correct rule we think is announced in Ann. Cas. 1912D, 254, note, where it is said:

"In Texas * * * it seems to be the rule that the denial of the right to open and close is not a ground for reversal, if it is apparent from the record that no injury resulted, but that if it is not so apparent a new trial will be granted."

[6] Appellant insists that the court erred in permitting the defendant Wheatley to detail a conversation alleged to have taken place between himself and Le Master, president of appellant bank. This contention is made the basis of the sixth assignment of error. Most of the evidence objected to we think was admissible, under the issue, tendered by appellees' pleadings, that the proceeds of some of the collateral attached to the debt as evidenced by the various notes, had been misapplied by the bank. The objection being to the whole of the testimony and part of it being admissible the court did not err in overruling the objection. Wandelohr v. Grayson County National Bank, 106 S. W. 413; Id., 102 Tex. 20, 108 S. W. 1154, 112 S. W. 1046.

[7] The defendant Morris was permitted to testify that he signed the note of April 1, 1913, as a surety. We think this was error. One of the issues made by the pleadings is whether Morris was a principal or a surety. Appellant contended that he had executed the note under circumstances which made him liable as a principal debtor. His status and relation to the debt was a mixed question of law and fact, and the effect of his testimony

was a construction of the agreement under which he signed and we think invaded the province of the jury. His statement that he was a surety involved a legal conclusion from the facts and circumstances surrounding the transaction. Connor v. Uvalde National Bank, 172 S. W. 175; McClung v. Watson, 165 S. W. 532; Sackville v. Storey, 149 S. W. 239.

[8] Under the ninth and tenth assignments appellant complains of the admission of certain evidence from the defendant Wheatley, in which Wheatley objected to switching some of the collaterals to protect a note of $1,100. The evidence is as follows:

"The night before we decided to throw Lankford Furniture Company into bankruptcy there was a meeting of a bunch of us in the Lankford Furniture shop and we talked the matter over. We talked in regard to the collateral security of the $2,500 on the note. Mike (Le Master) said he would switch it to another note at the time, and I said, 'You won't do no such thing.' We talked about something else then, and Mr. Zimmerman brought the matter up, and said we ought to help the bank out, and Mike said he would switch the collateral security from that $2,500 note, and I spoke up and said he would do no such thing. I said, if the bank had to lose their amount, I will keep my part of the balance, whatever it is, and take care of our home people, and let the others suffer."

[9] In the thirteenth paragraph of the first supplemental petition appellant alleged that there was an agreement that the collateral should be divided between the $2,500 note and the $1,175 note, and we think this testimony was pertinent and admissible upon that issue. A material issue made by the pleadings was that the plaintiff had failed to account for certain collateral securities held by it as security for the indebtedness of the defendants, and defendants sought relief to the extent of the value thereof. This issue having been raised by defendants, the burden of proof was upon them to show the value of the securities unaccounted for, and no evidence was introduced upon that point.

[10] The fifth paragraph of the main charge authorized the jury to find for plaintiff, less the reasonable value of any such collaterals not accounted for. There being no evidence to support the issue, it should not have been submitted.

[11, 12] Complaint is made in the twelfth and thirteenth assignments of paragraph 3 of the court's charge, as follows:

"If you find and believe from a preponderance of the evidence that the note dated April 1, 1913, was executed by the defendants R. R. Wheatley and Frank Morris, Jr., on the condition and agreement that the same should not be delivered or become effective until H. C. Lankford Furniture Company and H. C. Lankford should sign the same as principals, and that the same was to be held until such condition was complied with, then in such event the said defendants would not be liable upon said note, and you will, if you so find and believe, return your verdict in their favor upon this issue."

There is nothing in this charge which indicates that the court thought Wheatley and Morris were sureties. In our opinion the charge does not assume that fact. Even though Wheatley and Morris be considered as principals, they had the right to sign the note and deposit it with the payee, upon condition that it should not become valid and binding until other principals had also signed it. The charge is not subject to the criticism. Merchants' National Bank v. McAnulty, 31 S. W. 1091; Parker v. Naylor, 151 S. W. 1103. This also disposes of the fourteenth assignment.

The fifteenth assignment is disposed of by what we have said with reference to the first, fourth, and seventh assignments.

[13, 14] Under the sixteenth and eighteenth assignments appellant complains that the court refused to give two special charges with reference to the alleged failure of the plaintiff to exercise diligence in collecting the collateral securities. It appears that the defendants had given three separate notes for the debt in question—one dated July 25, 1912, which was renewed in a note dated November 1, 1912, and again renewed by note described in the original petition, dated April 1, 1913. We agree with appellant that, if for any reason defendants could escape liability on the note last signed, they might nevertheless be liable on the note immediately preceding it, and, if relieved from liability on that note, they could probably then be held on the first note executed. These special charges were intended to instruct the jury with reference to the rights of the plaintiff under each of the notes; but since the verdict was a general one, and we are not able to determine from the record upon which note it was based, we cannot, of course, decide whether or not the failure to give either of the charges was error. If the finding of the jury was based upon the note last executed, the failure to give the charge was harmless, but if upon the first or second note we think the charges should have been given. In the absence of any information upon this point, the presumption must be in support of the judgment.

Appellant requested special charge No. 6, to the effect that the jury should disregard all evidence on the question of whether the bank had failed to collect and apply the proceeds of certain collateral notes, because the evidence was too general, and did not show with sufficient certainty any amount which the bank had failed to collect or apply, and because the evidence further failed to show what notes could have been collected by diligence and were not so collected. This charge was clearly upon the weight of the evidence and should not have been given.

[15] Appellant also requested the court to instruct the jury not to consider the capital stock of the Furniture Company, which had been put up as collateral, in making their verdict, because it had been admitted on the trial that $1,500 worth of it had been sold prior to the execution of the note dated No-

vember 1, 1912, with full knowledge on the part of the makers that the stock had been sold and the proceeds not applied, but that other collaterals were substituted for the same and accepted by the defendant in lieu thereof. There seems to be some dispute in the record as to whether or not other collaterals had been substituted for the stock, in which event the charge would have been upon the weight of the evidence. Of course, if there was no dispute upon the question, the charge should have been given.

[16] Under the last assignment it is insisted that the verdict is contrary to the law and evidence, in that it was shown that Wheatley was bound by the note executed December 1, 1911, and was therefore without regard to any agreements thereafter made with reference to the renewal notes, liable upon the debt as originally created and that after allowing the credits, to which he may have been entitled, from the amounts collected on collateral notes, judgment should have been rendered against him in any event for the balance. If either of the renewals constituted a novation, then the note for which the renewal was substituted was no longer a binding obligation, and this is a question which should have been submitted to the jury. Rushing v. Bank, 162 S. W. 460; Heath v. First National Bank, 19 Tex. Civ. App. 63, 46 S. W. 123.

For the errors pointed out, the judgment is reversed, and the cause remanded.