HUME et al. v. DARSEY et al.

(Court of Civil Appeals of Texas. Galveston. Feb. 1, 1913.)

1. DEEDS (§ 211*) — TRUSTS (§ 89*) — EVIDENCE.

In trespass to try title evidence *held* to sustain a verdict finding that defendant D. did not purchase the land from the other defendants for plaintiff's benefit, and that such other defendants were not fraudulently induced to sign a warranty deed without knowledge of its contents, while intending only to execute a quitclaim.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647, 649; Dec. Dig. § 211;* Trusts, Cent. Dig. §§ 134–137; Dec. Dig. § 89.*]

2. EVIDENCE (§ 151*) — INTENT — STATE OF MIND.

On an issue in trespass to try title as to whether witness intended to execute a quitclaim or warranty deed, he having testified fully as to the facts relied on to show that he and his cograntor were imposed on in executing the warranty, it was not error to refuse to permit him to further testify that he considered a quitclaim deed as the only kind he and his cograntor could or would give; and that, as far as certain others were concerned, who had an option to purchase the property from the grantee, it was as good for them as a warranty.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 440; Dec. Dig. § 151.*]

3. EVIDENCE (§ 471*)—OPINION.

Where a witness and his cograntor had conveyed the land in controversy to D., who had given an option to the heirs of L. to purchase the land from him, evidence that the witness considered that D. was a benefactor of such heirs, and that the conveyance to D. was virtually a deed to the heirs, they not having money to pay for the land, thus securing D. for his outlay in their behalf, was properly excluded.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

4. EVIDENCE (§ 471*)—MATERIALITY—UNDERSTANDING OF WITNESS.

On an issue whether the intervening defendants had been fraudulently induced to execute a warranty instead of a quitclaim deed to D., evidence of a witness, who was present when the deed was executed, that he understood the deed was to be a quitclaim was properly excluded; he being unable to state the facts and circumstances on which he based the understanding.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

5. COVENANTS (§ 78*)—WARRANTY OF TITLE—DEFENSES.

Where the heirs of L. induced D. to purchase an outstanding title, which he did, receiving from his grantors a warranty deed, and giving to the heirs of L. a mere option to purchase from him by paying the amount paid, and interest, but such heirs were under no obligation to exercise the option, and D. had no re-

course on them, the fact that they instituted proceedings to have such outstanding title declared void, in which they were successful, did not preclude D. from recovering against his grantors on their warranty.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 77; Dec. Dig. § 78.*]

Appeal from District Court, Houston County; B. H. Gardner, Judge.

Suit by T. H. Leaverton and others against George E. Darsey and others, who impleaded J. L. Hume and another. From a judgment for plaintiffs to recover the land in controversy, and in favor of defendant Darsey against Hume and Pinckney on their general warranty in a prior deed, Hume and Pinckney appeal. Affirmed.

Nunn & Nunn, of Crockett, and N. A. Rector, of Austin, for appellants. Aldrich & Crook, of Crockett, for appellees.

REESE, J. This is a suit instituted by T. H. Leaverton and others in trespass to try title to recover of George E. Darsey the S. ½ of section 2, Dallas & Wichita Railway Company survey, in Houston county. Darsey answered by general denial and plea of not guilty, and also impleaded J. L. Hume and T. F. Pinckney, from whom he had bought the land, and who had executed to him a deed with covenants of general warranty, and sought to recover of them, in case plaintiff recovered the land, $425, being the amount paid by him. Upon trial, with the assistance of a jury, plaintiff recovered judgment for the land, and the verdict was in favor of defendant Darsey against Hume and Pinckney for $425, with interest from December 15, 1908. Darsey remitted the interest, and judgment was entered for the $425, with interest from date of the judgment. The judgment in favor of plaintiff for the lands is accepted by Darsey, Hume, and Pinckney, and no question is made on this appeal as to that. The only question presented is as to the correctness of the judgment against Hume and Pinckney on their warranty, from which they appeal.

The issues raised by the pleadings and evidence were presented to the jury by the following charge: "The deed from J. L. Hume and T. F. Pinckney, conveying the 320 acres sued for to George E. Darsey, is a general warranty deed, and under the undisputed facts of this case you will find for Darsey on said warranty against said Hume and Pinckney, unless you find from the evidence the affirmative of either one of the following propositions: (1) That the purchase by George E. Darsey was not for himself, but for the Leaverton heirs. (2) S. J. Osborne was the agent of said Darsey and the said Leaverton heirs, and that the agreement between said Osborne and Hume and Pinckney was that a quitclaim deed was to be given by Hume and Pinckney, and that said Osborne fraudulently represented that the deed was a quitclaim,

and that Hume and Pinckney, acting on such fraudulent representations, executed said deed, believing it was a quitclaim deed. If you find either one of said propositions in the affirmative, then you will find against said Darsey and in favor of Hume and Pinckney on Darsey's cross-bill."

[1] The verdict of the jury in favor of appellee Darsey against appellants necessarily embraces findings that Darsey bought the land for himself, and not the Leavertons, and that appellants were not imposed upon by Osborne in the execution of a warranty deed. We have examined the evidence with great care, and conclude that it was sufficient to authorize both of such findings; and we therefore find that in making the purchase of the land from Hume and Pinckney, through J. S. Osborne, Darsey was buying for himself, and not for the Leavertons. With regard to this, we find the facts to be, briefly, as follows: The land in controversy had been purchased by the father of plaintiffs, Leaverton and others, from the state. The sale was forfeited by the Commissioner of the General Land Office, and the land afterwards sold to appellants by the Land Commissioner. Learning of this, T. H. Leaverton sent J. S. Osborne, whose wife was one of the heirs, to Austin to see about it. The forfeiture had been declared under the advice of the Attorney General, but Osborne consulted attorneys, who were willing to undertake a suit by mandamus in the Supreme Court to have the forfeiture and resale set aside for a fee of $500—"no cure, no pay." Osborne then began to dicker with Hume and Pinckney for a sale of the land to Leaverton, who agreed to take $425. They evidently contemplated a sale to the Leavertons, but when Osborne notified T. H. Leaverton, who seems to have been acting for all of them, of this offer, Leaverton found that he did not have the money, so he applied to Darsey. They talked the matter over, and the outcome was that Darsey was to buy the land from Hume and Pinckney, and was to give the Leavertons the privilege or option to buy it from him for the same price, paying him interest and such expenses as he might be at in the matter. The matter of a future suit by the Leavertons to have the forfeiture and resale set aside was discussed, and Darsey was solicitous to know what recourse he would have then for his money. He was told by Leaverton that he would get a warranty deed, and that Hume, at least, would be good on the warranty. The agreement was made; Darsey sent the money to Osborne at Austin, who paid it to Hume and Pinckney; and they executed to Darsey a general warranty deed for the land, excepting from the warranty the balance still due the state. It appears, and this matter was talked over between T. H. Leaverton and Darsey, that Hume and Pinckney had paid

more' for the land than the original price in the sale to Leaverton, and, as the purchaser from them was to assume the balance of this purchase money due the state, it would be to the interest of the Leavertons to have the forfeiture set aside and the original sale reinstated; but Leaverton did not want to risk losing the land, which was worth about $3,500. The idea was, so far as the Leavertons were concerned, that if they failed in the mandamus proceedings they would fall back on their contract with Darsey and buy the land from him at the price paid by him and interest; and, so far as Darsey was concerned, that, if the mandamus suit failed, he would hold the land, unless the Leavertons bought it from him, and if the mandamus proceedings resulted in Leaverton's favor he would recover this amount from Hume and Pinckney on the warranty. This, in a general way, appears to have been the situation as understood by Leaverton and Darsey. Darsey went into the possession of the land, and has received in rents enough to pay the $425, but there was no understanding or agreement between him and Leaverton that this was to be applied as payment on the $425. T. H. Leaverton testified that they expected to recover these rents from Darsey, but no claim for them was made in the petition. The Leavertons afterwards instituted a proceeding by mandamus in the Supreme Court (Leaverton v. Robison, 102 Tex. 516, 120 S. W. 169), the result of which was that the forfeiture was set aside and the original sale reinstated. They thereupon instituted this suit against Darsey.

In regard to the other issue, as to the execution of a warranty instead of a quitclaim deed, the evidence is conflicting. Osborne testified positively that it was understood and agreed that a warranty deed should be given, which was denied by both Hume and Pinckney. In writing the deed a blank form was used. Osborne, who wrote it, added to the printed part, in two places, a condition excepting from the warranty the claim of the state for unpaid purchase money. He testified that Pinckney, an educated and intelligent man above the ordinary, read the deed very carefully before signing, and that Hume, who was a business man, at one time a banker, also read it, but not so carefully. Osborne denies very vigorously any imputation of imposition or fraud, or that the warranty deed was not fully agreed upon. The evidence fully sustains the verdict on both of the issues submitted to the jury.

[2] The trial court did not err in excluding from the jury the following portion of Pinckney's answer to direct interrogatory in deposition taken by appellants: "Under the conditions then existing, I considered a quitclaim deed as the only kind of a deed we could or would give, and that, as far as the Leaverton heirs were concerned, it was as good for them as a warranty." The parties knowingly executed the deed to Darsey, and knew that he was furnishing the money to pay for the land. If a quitclaim was as good as a warranty to the Leavertons, it did not follow that it was as good as a warranty to Darsey. The parties had no right to assume that Darsey was buying for the Leavertons, or that he was to hold the land in trust for them. Pinckney testified very fully as to the facts relied upon to show that he and Hume were imposed upon, as did Hume. It was not error to refuse to allow him to testify further as to the state of his mind, or his reasons for executing a quitclaim. The point is presented by the first assignment of error, which is overruled.

[3] Nor was there error in excluding the answer of Pinckney that he "considered Darsey as a friendly benefactor of the Leavertons, and, as such, the deed to him was virtually a deed to them; the Leavertons not having the money to pay for the land, and thus securing Darsey for his outlay in their behalf."

[4] Nor was there error in excluding the testimony of Robbins, given by deposition, "that his understanding was that the deed was to be a quitclaim." It does not appear that Robbins was not able to state the facts and circumstances upon which he based the understanding. These facts should have been detailed to the jury, in order that they might determine whether they supported the contention of appellants that it was agreed that they should give a quitclaim deed, and that they were imposed upon as claimed. Robbins was present when the deed was executed, which was done at his office. He was first called upon to write the deed, and started to do so, but turned the job over to Osborne. What was said by either of the parties then and there tending to throw any light upon the agreement or understanding of the parties as to the kind of deed that was to be executed would be admissible, but not the witnesses' understanding of the matter.

[5] By the sixth assignment appellants assail the verdict and judgment as being contrary to and unsupported by the evidence on both of the issues presented. Our conclusions of fact substantially dispose of this question. We agree with appellants that if Darsey really bought the land for the Leavertons, and took the deed in his name for their use and benefit, the case as to appellants would be the same as if the deed had been made to them, in which case they could not recover on the warranty, if they destroyed the effect of the deed by having the sale to their vendors canceled, and the original sale to their ancestor reinstated. This operated as a destruction of their vendors' title, and would have precluded a recovery by them on the warranty. But Darsey did not buy for the Leavertons, but for himself, with a verbal agreement that the Leavertons might have the privilege or option to buy

154 S.W.—17

from him. They were not, under the agreement given, required to do so. Darsey has no recourse on them whatever. He does not at all occupy the same position that the Leavertons would have occupied if the deed had been made to them. The fact that Darsey has received and appropriated the rents we do not think alters the case. Both he and Leaverton testify that he was not to apply them to the payment of the $425. Under the evidence in the record there is no doubt that Darsey is liable to the Leavertons for the rents. The evidence does create a suspicion, however, that this liability is not intended to be enforced, but we think that does not affect the character of Darsey's title. The sixth assignment of error and the several propositions thereunder are therefore overruled.

Finding no error in the record, the judgment is affirmed.

Affirmed.