**J. S. CAMPBELL, Executor, et al.,**
**Appellants,**

v.

**Paul LA DUE et al., Appellees.**

No. 14861.

Court of Civil Appeals of Texas.

Dallas.

Nov. 12, 1954.

Grindstaff, Zellers & Hutcheson, Weatherford, for appellants.

Dwight L. McCormack, John A. Erhard, Dallas, for appellees.

DIXON, Chief Justice.

This is a suit on a note and chattel mortgage.

Appellants J. S. Campbell and Georgia Wright Daniel Steinbach, executor and executrix of the estate of George Daniel, deceased, brought the suit as plaintiffs. Georgia Wright Daniel Steinbach is the daughter of deceased by a previous marriage. Appellees Paul LaDue and B. C. Christian, defendants in the trial court, were sued on a note dated August 24, 1951 in the amount of $3,500 due February 24, 1952, payable to George Daniel and secured by a mortgage on numerous items of personal property. The note and mortgage are signed only by appellees. So far as the face of the instruments show, appellees signed in their individual capacity.

Appellees in a sworn answer plead lack of consideration, and claim that the note and mortgage were signed by them merely for the accommodation of George Daniel, now deceased, and were really the obligation of Lynn Cox Company, a corporation.

After a trial before the court without a jury judgment was rendered in favor of defendants, and the executor and executrix have appealed.

At the request of appellants the court made these findings among others: That (1) on August 15, 1949 Lynn Cox Company, a corporation, borrowed $3,500 from George S. Daniel and executed its note for that amount through its then president, Lynn Cox; (2) the records of the Lynn Cox Company show said note as an obligation of the corporation; (3) the note dated August 24, 1951 signed by appellees was executed for and in behalf of the corporation in renewal of the corporation's note of August 15, 1949, and not by appellees in their individual capacity; (4) appellees received no consideration for signing the note; (5) nor any benefits from the loan to the corporation; (6) George S. Daniel, during his lifetime, made no demand for payment of the $3,500 from appellees; (7) to secure payment of the $3,500 George S. Daniel took an assignment of three contract accounts from the corporation; (8) on August 24, 1951 appellees acted for the corporation in executing a chattel mortgage on the physical assets of the Lynn Cox Company; (9) George S. Daniel had acquired said assets at a tax sale; (10) George S. Daniel did not intend to charge appellees personally with the $3,500 obligation; and (11) neither of the appellees personally assumed payment of the $3,500 sued on.

Some of the facts are not disputed. George Daniel, deceased, was the largest stockholder and a director in Lynn Cox Company, a corporation, which was in the highway sign business. He had invested something over $20,000 in the company. Appellees were at first only employees of the corporation but later were also directors. Mrs. Allie Rhea Daniel, surviving widow of George Daniel, deceased, was a stockholder.

Lynn Cox Company, a corporation, did not prosper. On August 15, 1949 Lynn Cox, who was then the corporation's president, negotiated a loan of $3,500 for the corporation from George Daniel, executing a note in behalf of the corporation in that amount. But the corporation still did not prosper. On August 24, 1951 the United States Government sold certain of the corporation's assets consisting of personal property to satisfy a tax lien. At this tax sale George Daniel individually bought the said assets for $1,505. (Their reasonable value however according to Lynn Cox, former president of the corporation, was

between $8,000 and $13,000.) On the same day George Daniel resold the property to appellees LaDue and Christian, who were about to enter business for themselves under the name Highway Sign Company.

Three contract accounts receivable owned by the corporation were not included in the tax sale by the Government for the reason that they were not covered by the tax lien. Thus they continued to be corporation assets.

On the same day, August 24, 1951, George Daniel, with appellees LaDue and Christian, came to the office of H. B. Sanders, attorney, for the purpose of having a number of papers prepared in connection with agreements consummated that day. At least part of the time Mrs. Allie Rhea Daniel was also present at this meeting. Sanders prepared these documents: (1) The note for $3,500 and (2) the mortgage sued on; (3) a bill of sale from George Daniel to appellees for the personal property which George Daniel had earlier in the day bought at the tax sale of Lynn Cox Company's assets; and (4) an assignment from Lynn Cox Company, a corporation, to George Daniel of the three contract accounts receivable still owned by the corporation, the purpose of the assignment being to secure George Daniel the payment of the 1949 indebtedness of $3,500 owed by the corporation to George Daniel. This assignment was signed by George Daniel and appellees LaDue and Christian as directors of Lynn Cox Company, a corporation. It was signed by Mrs. Allie Rhea Daniel as a stockholder. The property sold to appellees is the same property described in the chattel mortgage from appellees to George Daniel, which on its face purports to secure payment of the $3,500 note signed by appellees.

George Daniel died October 23, 1951.

From this point on the testimony is in conflict. Appellees' main witness, Mrs. Allie Rhea Daniel, surviving widow of George Daniel, deceased, testified by deposition that she was present at the meeting in the office of H. B. Sanders, and that the total consideration for the sale of the personal property by George Daniel to appellees was $1,500, which amount was paid in full in cash by appellees. The $3,500 note and mortgage executed the same day, she says, were merely in renewal and extension of the $3,500 note of August 15, 1949 owed by the Lynn Cox Company, a corporation. She further testified that appellees really signed the note as officers of the Lynn Cox Company as a favor to George Daniel so that Daniel might have a prior secured claim against the corporation's assets as against other creditors of the corporation. (Apparently it did not occur to the witness that her testimony at this point might not be altogether consistent with the fact that the property described in the mortgage was no longer an asset of the corporation, having been sold at the tax sale to George Daniel individually, and by George Daniel to appellees individually.) Mrs. Daniel also testified that she heard George Daniel say to LaDue and Christian that he did not expect them to pay the $3,500 note of August 24, 1951 out of their own pockets.

On the other hand, appellants' main witness, H. B. Sanders, attorney, testified that he was instructed by George Daniel and appellees LaDue and Christian, with Daniel doing most of the talking, to prepare papers conforming to appellees' agreement to pay $5,000 to George Daniel for the personal property, of which consideration $1,500 was paid in cash and the balance of $3,500 evidenced by the note and mortgage sued on. The 1949 indebtedness of $3,500 owed by the corporation was secured by the assignment, executed August 15, 1951, of the three contract accounts receivable owned by the corporation. Thus George Daniel, who had invested heavily in Lynn Cox Company, a corporation, was endeavoring to recoup his loss to the extent of $5,000 to be paid him by appellees for the personal property and $3,500 on the corporation's debt secured by the assignment—a total recovery of $8,500, which was all that George Daniel could expect to salvage from

the ruins of Lynn Cox Company, a corporation.

From the above summary of the testimony it will be seen that an ultimate issue in the case, if not *the* ultimate issue is this: Was the $3,500 note of August 24, 1951, the note sued on, really a renewal of the old Lynn Cox Company debt of August 15, 1949, as claimed by appellees, which they executed merely as a favor to George Daniel without any consideration flowing to them individually?

█ Appellants' point No. 30 complains of the alleged error of the trial court in permitting the witness Allie Rhea Daniel to testify over their objection that the $3,500 note sued on was just an extension of a loan made by George Daniel to Lynn Cox Company.

In this connection the record shows these proceedings during the direct examination of the witness Allie Rhea Daniel by appellees' attorney: "Q. Will you state what the instrument is that I did exhibit to you a minute ago? A. It is a sheet out of the ledger that the Lynn Cox Company— stating that they owe Mr. Daniel $3,500. * * * Q. (By Mr. Erhard) Mrs. Daniel, the Petition of the Plaintiff alleges that on or about the 24th day of August, 1951, that Paul A. LaDue and B. C. Christian executed their note in favor of George Daniel for the sum of $3,500. Now, will you state whether or not that note is the same note that appears upon the ledger sheet that I exhibited to you a few minutes ago? Mr. Zellers: Now, Your Honor, we want to object to that because that calls for a conclusion of the witness and it is prejudicial to the rights of Plaintiff. * * * We further object on the ground that it involves a question of both law and fact which this witness could not be qualified to answer * * * and would be hearsay. * * * The Court: Overrule the objection. Mr. Zellers: Note our exception. Mr. McCormick: All right, you may answer. * * * A. Well, it is just an extension of that note."

We sustain appellants' point No. 30. There was nothing on the face of the note to indicate that it was an extension of an earlier note owed by the corporation. Therefore the statement by the witness was her opinion or conclusion of the effect to be given the instrument. The witness might well have been asked what she heard George Daniel and appellees say to each other in the office of H. B. Sanders, or elsewhere, what she saw them do, what the surrounding circumstances were, etc.; and based upon such factual testimony, it would have been for the court, not the witness, to say whether the note sued on was in effect a renewal of the old Lynn Cox Company note of August 15, 1949. For as we have already said, that question is one of the ultimate issues, if not *the* ultimate issue in the case. We think our holding is supported by these cases and authorities: Biering v. Wegner, 76 Tex. 506, 13 S.W. 537; First State Bank v. Cooper, Tex.Civ.App., 179 S.W. 295 (syllabus 7); Connor v. Uvalde Nat. Bank, Tex.Civ.App., 172 S.W. 175; Hume v. Darsey, Tex.Civ. App., 154 S.W. 255 at page 257; Lumsden v. Jones, Tex.Civ.App., 205 S.W. 375; Federal Ins. Co. v. Munden, Tex.Civ.App., 203 S.W. 917; Chavaux v. Brewer, Mo. App., 223 S.W. 751; 19 Tex.Jur. 349, 351; 32 C.J.S., Evidence, § 446, p. 74; McCormick and Ray, "Texas Law of Evidence," page 815.

In the case of First State Bank v. Cooper, supra [179 S.W. 299], a defendant was permitted to testify that he signed a note as surety. The court held this was error, saying: "One of the issues made by the pleadings is whether Morris was a principal or a surety. Appellant contended that he had executed the note under circumstances which made him liable as a principal debtor. His status and relation to the debt was a mixed question of law and fact, and the effect of his testimony was a construction of the agreement under which he signed and we think invaded the province of the jury."

454

■ In an opinion approved by our Supreme Court it has been held that a mere conclusion or opinion of a witness as to one of the vital issues of a case has no probative force, even though no objection was made thereto. Webb v. Reynolds, Tex.Com.App., 207 S.W. 914; see also Watson v. Tamez, Tex.Civ.App., 136 S.W. 2d 645.

■ Appellants' point No. 31 complains of the admission of other testimony of Mrs. Allie Rhea Daniel, but the record indicates that appellants failed to interpose timely objection. Therefore the point raises no question which is properly before us for consideration.

■ Appellants' point No. 32 complains that certain testimony of Paul LaDue, one of appellees, violates Art. 3716, V.A.C.S., "The Dead Man's Statute." The testimony of H. B. Sanders was apparently something of a bombshell to appellees. He testified that in his presence George Daniel, deceased, and Paul LaDue and B. C. Christian, appellees, discussed the sale by George Daniel to appellees for $5,000 of the chattels bought by George Daniel earlier in the day at the tax sale; and the assignment of the contract accounts to George Daniel to secure the $3,500 owed by the corporation. After considerable conversation he was instructed to draw up papers accordingly.

The record shows that these proceedings thereafter took place: Mr. Erhard: "In view of the testimony of Mr. Sanders * * * I would like to take Mr. LaDue back on the stand in rebuttal." Paul LaDue then took the witness stand. By Mr. Erhard: "Mr. LaDue, you heard the testimony of Mr. Harold Sanders * * * You are one of the principals and I want to ask you some questions. * * * Now did you at any time, in Mr. Sanders' presence, agree that you would pay $8,000.00 * * * by note or cash or otherwise?" At this point an exchange of remarks occurred between opposing counsel, after which appellees' counsel continued: "Did you on the 21st day of August, 1951 in the presence of Mr. Harold Sanders, or to him, agree to pay $8,000.00 for the chattels of the Lynn Cox Company which had been foreclosed by the Government?" Answer "No, sir." Appellants objected to this question and answer on the ground that it violated the Dead Man's Statute. A somewhat lengthy argument then took place as to the merits of the objection. We reproduce part of the argument of appellees' counsel: "* * nobody has testified here except a lawyer in the case about a $5,000.00 transaction and I don't believe the dead man's Statute * * * will seal the lips of a man in the courtroom when a live witness has testified he heard him make a certain agreement. * * * He hasn't got a single basis in his pleading for this $5,000.00. It is entirely new. It came entirely from the testimony of Mr. Harold Sanders and this witness sat here and heard him, * * *." After further argument the court overruled appellants' objection.

We sustain appellants' point No. 32. The reference to the date August 21, 1951 was obviously an inadvertence, the correct date being August 24, 1951. The context of the record shows unmistakably that part at least of the question asked about an agreement in the presence of Mr. Sanders as to the purchase price of the chattels of the Lynn Cox Company which had been foreclosed by the Government. This evidence, expressly offered in rebuttal to the testimony of Mr. Sanders, could have referred only to an agreement or transaction with George Daniel, deceased, for that is the only agreement testified to by Mr. Sanders.

In an opinion adopted by our Supreme Court it has been held that under Art. 3716, V.A.C.S. a party may not use interested witnesses in his own behalf in order to rebut and negative the evidence of disinterested and competent witnesses placed on the stand by the other party. Royall v. Holloway, 118 Tex. 1, 299 S.W. 862 at page 864. Though the proffered testimony may be negative—that is, a mere denial of a transaction with deceased —it is forbidden by the statute. Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298. A party may not, as appellee LaDue here

did, testify as to the terms of a contract with deceased. Horlock v. Guardian Trust Co., Tex.Civ.App., 274 S.W. 204.

Appellants' point No. 33 complains of the introduction of similar testimony from B. C. Christian, the other appellee. As the situation, question, answer and ruling of the court are similar to that presented under point 32 we shall not go into detail about it. We sustain appellants' point 33.

■ Appellees contend that any error in admitting their evidence in violation of the Dead Man's Statute is harmless, because it will be presumed that the court considered only legitimate evidence. In support of their contention appellees cite us Pruett v. First National Bank, Tex.Civ. App., 175 S.W.2d 658.

We do not disagree with the holding in the cited case, but we do not consider it controlling here. For one thing, in the case now before us we think the legitimate evidence is insufficient to support the court's finding in favor of appellees. And for another thing, we think the record before us plainly shows that the court did consider appellees' testimony denying the transaction with deceased as testified to by Mr. Sanders. The objection and the applicability of Article 3716, V.A.C.S. were argued vigorously and at considerable length to the court by counsel for both parties. We find no circumstance to indicate that the court did not weigh the question seriously before ruling, or that he did not consider the evidence. The setting seems to us to show the contrary.

Appellants' other points on appeal assert that there was no evidence, or insufficient evidence to support the court's findings and judgment, or that the findings and judgment are contrary to the overwhelming weight of the evidence. In view of our holding with reference to points 30 to 33 inclusive we believe it is unnecessary to pass on appellants' other points.

The judgment of the trial court is reversed and the cause remanded for new trial.