Texas State Bank v. Hoolihan Ranch Co. 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-93-332-CV




TEXAS STATE BANK, SAN ANGELO, TEXAS,




 APPELLANT


vs.





HOOLIHAN RANCH COMPANY, A PARTNERSHIP; DWAYNE DAVIS;


RUSSELL DAVIS; SCOTT DAVIS AND


GREG DAVIS, INDIVIDUALLY,




 APPELLEES



 



FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL
DISTRICT


NO. CV90-1305-B, HONORABLE DICK ALCALA, JUDGE PRESIDING


 





 This is an appeal from a suit on a note. Appellant, Texas State Bank, San
Angelo, Texas ("the Bank"), sued Hoolihan Ranch Company, a partnership, and Charlie
Davis, Charlene Davis, Russell Davis, Dwayne Davis, Scott Davis, and Greg Davis, to collect
the balance due on a note. The Bank contended the note was a partnership obligation. The
cause was tried to a jury, which failed to find that the note was an obligation of the
partnership. The Bank appeals the district court's take-nothing judgment, rendered pursuant to
the jury's verdict. We will affirm the judgment of the district court.



BACKGROUND


 Hoolihan Ranch Company is a Texas general partnership formed in 1980,
consisting of Charlie Davis and his four sons, Russell, Dwayne, Scott, and Greg Davis. Although the partnership's principal business was ranching, most of its ranching operations
had ceased by 1987.

 In 1984, the partnership began funding its operations with money borrowed
from Stockmans Credit Corporation, a wholly-owned subsidiary of Wool Growers Central
Storage Company (collectively "Stockmans"). The two entities shared a common directorship,
of which Charlie Davis was a member.

 Stockmans in turn borrowed most of its lending capital from Farm Credit Bank
of Texas. When borrowers applied for loans from Stockmans, it would forward the
applications to Farm Credit. Farm Credit had the option of loaning money to Stockmans to
cover all or part of the loan, or put another way, Farm Credit could "discount" all or part of
the amount of the loan. If Farm Credit discounted less than the total amount of the loan,
Stockmans would fund the balance, which Stockmans referred to as its "on-hand balance." In
either case, Stockmans would receive all payments on the loan and forward to Farm Credit its
share of the payment.

 For three years, the partnership maintained an ongoing loan balance with
Stockmans, represented by successive promissory notes. When a note came due--typically once
a year, depending on the length of the specific note--the partnership would renew the note,
executing a renewal note in the amount still owed to Stockmans. The partnership executed
such a renewal note on October 7, 1987, in the amount of $782,184.79. Stockmans' records
indicate that, for this note, Stockmans carried $224,724.25 as its on-hand balance, with the
remainder funded by Farm Credit. At trial, the partners claimed to have had no knowledge
that Farm Credit had discounted a portion of their note.

 In 1988, Stockmans began having financial troubles. In March 1988, Farm
Credit sued Stockmans in state court for breach of the lending agreement between the two
institutions. Among other relief, Farm Credit sought to protect its interest in the promissory
notes Stockmans held through judicial foreclosure and by appointment of a receiver. The
court did not appoint a receiver, but instead ordered a manager appointed. One of the
manager's duties was to restructure the discounted loans between Stockmans and Farm Credit.

 On May 12, 1988, Charlie Davis and Russell Davis signed a note for the
amount of $318,777.78. This note was payable on demand, or if no demand was made,
payable by July 1, 1988. "Hoolihan Ranch Company" is typed on the top signature line of this
note. On the second signature line appears the handwritten signature of Charlie Davis, above
the typed words "Charlie Davis, Individually and as Attorney in Fact for my spouse, Charlene
Davis." Next is the handwritten signature of Russell Davis, below which is typed "Russell
Davis, Individually and as Attorney in Fact for my spouse, Kim Davis." The parties dispute
whether this note was an obligation of the partnership or only of the named individuals. The
Bank contends that this note was given as a renewal of Stockmans' on-hand balance in the
1987 partnership-renewal note. The partnership contends this note was a personal obligation
of Charlie, Charlene, Russell, and Kim Davis.

 The note sued on by the Bank was executed on May 25, 1988, for $327,499.73
(hereinafter "the disputed note"). The signature block on the disputed note was similar to the
May 12 note, but was signed only by Charlie Davis. "Hoolihan Ranch Company" is also
typed on the top signature line of the disputed note. The handwritten signature of Charlie
Davis appears on the second signature line, with "Charlie Davis, Individually and as Attorney
in Fact for my spouse, Charlene Davis," typed below it. The Bank claims that the disputed
note is a partnership obligation, executed as a renewal of the May 12 note. The partnership
contends that Charlie Davis executed the disputed note only in his individual capacity, not as a
partnership obligation.

 On September 20, 1988, Stockmans filed for relief under Chapter 11 of the
United States Bankruptcy Code. A bankruptcy plan was approved on January 23, 1990. 
Pursuant to the plan, the Bank, as a creditor of Stockmans, was assigned several notes,
including the May 12 note and the disputed note. The record indicates that Farm Credit
retained the $782,184.79 renewal note. (1)

 The Bank sued the partnership, as well as Charlie, Charlene, Russell, Dwayne,
Scott, and Greg Davis, individually, to collect the balance due on the disputed note. The Bank
contended that the disputed note was executed as a renewal note, in the amount of Stockmans'
on-hand balance. Appellees contended that the disputed note was an individual obligation of
Charlie and Charlene Davis, and not a partnership obligation. The testimony of Charlie Davis
as signatory on the disputed note was crucial to this issue. In his deposition testimony,
Charlie Davis had confirmed that the note was in fact a partnership obligation, giving
testimony that made out a prima facie case for the Bank. At trial, however, Charlie Davis
recanted his deposition testimony and testified that the disputed note was not a partnership
obligation. (2)

 The case was tried before a jury, which failed to find that the disputed note was
a partnership obligation, or that the partnership owed any money to the Bank. The district
court rendered judgment pursuant to the jury verdict. The Bank appeals, challenging the legal
and factual sufficiency of the jury's verdict; the appellees bring a cross-point challenging an
evidentiary ruling of the district court.



LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

 In points of error one and two, the Bank raises legal and factual sufficiency
challenges to the jury's failure to find that the disputed note was a partnership obligation. In point
of error three, the Bank contends that the trial court erred by overruling its motion for a directed
verdict because the evidence established as a matter of law that the disputed note was a partnership
obligation.

 A legal sufficiency challenge is designated as a "matter of law point" when the
complaining party bore the burden of proof at trial. In deciding a matter of law point, we must
consider only the evidence and inferences tending to support the jury's failure to find and
disregard all evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d
588, 593 (Tex. 1986), cert. denied, 498 U.S. 847 (1990); Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965). See generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence"
and "Insufficient Evidence", 69 Tex. L. Rev. 515 (1991); Michol O'Connor, Appealing Jury
Findings, 12 Hous. L. Rev. 65 (1974). The complaining party must demonstrate that the record
conclusively establishes the finding not made by the jury. If more than a scintilla of evidence
supports the jury's answer, the point of error will be overruled. Lewelling v. Lewelling, 796
S.W.2d 164, 166 (Tex. 1990).

 At trial, Charlie Davis testified that when he signed the disputed note, he did not
intend to bind the partnership and considered the debt to be his own. Although this testimony
differs from his deposition testimony in which he admits that the disputed note was a renewal
note, we cannot say that this amounts to no evidence. (3) Furthermore, under the signature of
Charlie Davis on the disputed note are the typewritten words "Charlie Davis, Individually and as
Attorney in Fact for my spouse, Charlene Davis." If we ignore all evidence to the contrary, we
cannot conclude that there is no evidence in the record supporting the jury's answer. 
Accordingly, the Bank did not prove as a matter of law that the note was a partnership obligation,
and we overrule the Bank's legal sufficiency and directed verdict points of error.

 We next turn to the Bank's factual sufficiency points of error. A factual sufficiency
challenge is designated as a "great weight and preponderance point" when the complaining party
bore the burden of proof at trial. In reviewing a great weight and preponderance point, we must
consider and weigh all the evidence and should set aside the judgment only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also
Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). In conducting a factual sufficiency
review, we do not sit as a thirteenth juror nor are we permitted to substitute our opinion for the
verdict of the jury. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988).

 In this case the Bank relies primarily upon the fact that "Hoolihan Ranch Company"
is typed on the disputed note above the signature of Charlie Davis. Under the liberal definition
of signature in the Uniform Commercial Code, a typed name of a party can constitute a signature. 
Tex. Bus. & Com. Code Ann. § 3.401 cmt-2 (West 1968) ("A signature may be handwritten,
typed, printed or made in any other manner."). However, the typewritten signature, without
more, does not establish the disputed note as a partnership note or as a partnership obligation. 
The typewritten signature must be accompanied by some type of authorization from one of the
members of the partnership. Charlie Davis, the sole signatory on the disputed note, certainly
qualifies as a partner who possessed the appropriate authority to bind the partnership. However,
there is no direct evidence in this record as to who typed "Hoolihan Ranch Company" on the top
signature line or more importantly, when "Hoolihan Ranch Company" was typed on the disputed
note. At trial, when Charlie Davis was asked whether he noticed the name of the partnership on
the disputed note when he signed it, he responded, "May have, but I just--I don't recall whether
I noticed it or not, but I probably did." John Sutton Allison, II, president of Wool Growers and
president of Stockmans during its dissolution, testified that as a general matter, when a business
name was typewritten above the signature line on a Stockmans note, the signature was being made
in a representative capacity. Additionally, "Hoolihan Ranch Co.," or some variant, was also
typed on the 1987 note, as well as earlier renewal notes which the parties agree were partnership
obligations. However, the jury heard evidence that all of the notes executed prior to and in 1987,
which were admittedly partnership obligations, were signed by the partners in a designated
representative capacity, such as, "By Charlie Davis, partner" or "By Russell Davis, for the
partnership." Such a representative-capacity designation was missing from the disputed note and
its counterpart signed in May of 1988.

 The Bank relies heavily upon the fact that the two notes executed in May of 1988
represented Stockmans' on-hand balance from the 1987 partnership-note renewal. The record
contains evidence that the amount of the May 12 note matches the amount Stockmans reflects on
its book for what it designates as its on-hand balance, plus accrued interest, for the 1987 note, and
the amount of the disputed note matches the balance due on the May 12 note as of the date the
disputed note was executed. Stockmans' bookkeeper, Patty Self, testified that she was instructed
to prepare the May 12 note and the disputed note as renewals of Stockmans' on-hand balance in
the 1987 renewal note, and calculated the amounts on both the disputed note and the May 12 note
by determining the interest that had accrued on Stockmans' on-hand balance on the 1987 note. 
However, the jury also heard evidence that the partners were unaware that their note was being
discounted between Stockmans and Farm Credit. Further, there is evidence in the record that,
following the judicial-foreclosure lawsuit between Stockmans and Farm Credit, the partnership
was still responsible for the 1987 note Farm Credit held in the total amount of $782,000.00. (4) The
jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. 
Ethicon, Inc. v. Martinez, 835 S.W.2d 826, 834 (Tex. App.--Austin 1992, writ denied). The
evidence in this case was conflicting. Even were we to conclude that the evidence favorable to
the Bank preponderated, we simply cannot say that the evidence in this record is so
overwhelmingly in the Bank's favor as to require overturning a jury verdict. We overrule the
Bank's factual sufficiency points of error.



CONCLUSION


 Because we conclude that the jury's verdict finds support in the evidence adduced
at trial, we need not consider the appellees' cross-point dealing with the admissibility of certain
evidence. The judgment of the district court is affirmed. 



 Mack Kidd, Justice

Before Justices Aboussie, Kidd and B. A. Smith

Affirmed

Filed: October 12, 1994

Do Not Publish

1. [1]  The record also indicates that the partnership reached a settlement agreement with Farm
Credit regarding repayment of the 1987 renewal note.
2. 

 [2]  The Bank contended that in the interim Charlie Davis had been discharged in a personal
bankruptcy adjudication and thus his testimony regarding the disputed note changed because he
had "nothing to lose" by accepting personal responsibility for the disputed note.
3. [3]  We reject the Bank's argument that the testimony of Charlie Davis does not constitute
probative evidence because it is opinion testimony of a party. None of the cases cited by the
Bank involve a party's testimony regarding the party's own intent. See Webb v. Reynolds, 207
S.W. 914, 916-17 (Tex. Comm'n App. 1919, judgment adopted); Kimbell, Inc. v. Roberson,
570 S.W.2d 587, 589 (Tex. Civ. App.--Tyler 1978, no writ) (testimony on length of time
hazardous condition existed amounted to no evidence when witness had no personal
knowledge); Campbell v. LaDue, 273 S.W.2d 450, 453-54 (Tex. Civ. App.--Dallas 1954, no
writ).
4.   Although there is testimony in the record that Farm Credit considered that the
partnership only owed it a portion of the 1987 note representing its discounted share of the
note, no document was introduced which indicated any sort of written agreement to this effect.